**CASE CLOSED**

**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VITO EVOLA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-1481 (JAP) |
| | : | |
| v. | : | |
| | : | |
| JOHN CARBONE, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | Crim. Action No. 97-203 (JAP) |
| | : | |
| v. | : | Civil Action No.  05-1487 (JAP) |
| | : | |
| VITO EVOLA, | : | **AMENDED OPINION**[1] |
| | : | |
| Defendant. | : | |

APPEARANCES:

      Thomas E. Moseley
      One Gateway Center
      Suite 2600
      Newark, NJ 07102

---

[1]This amended opinion has been filed to correct a citation error.  On page 13, at the end of the second sentence of the first full paragraph, the short cite to the *Thornton* case has been changed to *United States v. Day*, 969 F.2d 39 (3d Cir. 1992).  In turn, the full cite of the *Day* case at the end of the last sentence of the first paragraph on page 14 is now a short cite.  Every other aspect of the opinion remains the same.

Steven A. Morley
MORLEY SURIN & GRIFFIN, P.C.
325 Chestnut Street, Suite 1305
Philadelphia, PA 19106
        Admitted Pro Hac Vice

        Counsel for Plaintiff


Christopher J. Christie
UNITED STATES ATTORNEY
Neil R. Gallagher
Daniel J. Gibbons
Andrew Carey
ASSISTANT UNITED STATES ATTORNEYS
970 Broad Street, Suite 700
Newark, NJ 07102

        Counsel for Defendants.

-2-

PISANO, District Judge

Both of the above captioned cases concern the imminent removal from the United States

of petitioner Vito Evola ("Evola"). Evola petitions this Court for a Writ of Habeas Corpus under

28 U.S.C. §2241, challenging the decision of an Immigration Judge to remove him from the

United States based on his commission of an "aggravated felony." Evola also petitions the Court

for entry of a Writ of Error Coram Nobis, seeking to vacate the guilty plea and conviction that

may ultimately lead to his removal, based on ineffective assistance of counsel. The Court

recently denied Evola's request for a stay of removal with the understanding that he would be

accorded swift justice by way of the Court's immediate attention to the outstanding petitions.

Because these matters are so intertwined, and in the interest of timeliness, the Court will decide

both cases in this opinion. For the reasons that follow, Evola's petitions for habeas relief and

Writ of Error Coram Nobis are DENIED.

I.      FACTUAL HISTORY

Evola is a thirty-nine year-old Italian national and citizen who was granted immigration

status as a lawful permanent resident in the United States in 1980. He is self-employed and has

three children from two marriages, each of whom is a United States citizen. On April 23, 1997,

Evola was named in a 23-count indictment along with eleven co-defendants for their alleged role

in a conspiracy to distribute narcotics. On August 13, 1997, Evola pled guilty to Count 20, a

violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2, charging use of a communication device to

facilitate a conspiracy to distribute and to possess with intent to distribute a controlled substance.

As part of the plea, the government agreed to dismiss Count I, which charged Evola with

conspiracy to distribute and possess with intent to distribute a controlled substance in violation of

-3-

21 U.S.C. § 841(a). On February 19, 1998, Evola was sentenced to five years probation. The judgment became final on March 2, 1998, after Evola failed to file an appeal within ten days.

On October 4, 2001, the Immigration and Naturalization Service ("INS")[2] initiated removal proceedings against Evola based on his 1997 conviction. The INS charged that Evola was removable pursuant to the Immigration and Nationality Act ("INA") because he was convicted of an "aggravated felony," and because he violated a federal law relating to a controlled substance (other than a single offense involving possession for one's own use of 30 grams or less of marijuana). *See* Evola Memorandum of Law, Exhibit B, Form I-862. On February 11, 2004, an Immigration Judge ("IJ") ordered Evola's removal to Italy. The Board of Immigration Appeals ("BIA") affirmed the removal order on December 10, finding that a violation of 21 U.S.C. § 843(b) constituted an "aggravated felony." Evola now challenges the finding that 21 U.S.C. § 843(b) is an "aggravated felony."

In September 2002, Evola filed a habeas corpus petition pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct his sentence as a result of ineffective assistance of counsel. The petition alleged that Evola's attorney, Joseph Santaguida, Esq. ("Santaguida"), advised Evola that he could enter a guilty plea without suffering any consequences with respect to his immigration status. On September 3, 2003, this Court denied Evola's petition because it was barred by the relevant one-year statute of limitations. Evola now seeks relief from his conviction, again based on ineffective assistance of counsel, but this time under the rubric of a writ of error coram nobis. Each petition will be addressed in turn below.

_____

[2]The INS has since been absorbed into the Department of Homeland Security ("DHS"), and it now functions under the DHS as the Bureau of Immigration Customs and Enforcement ("BICE").

## II.    DISCUSSION

### A.    The § 2241 Petition

Petitioner concedes that he is subject to removal because his conviction relates to a controlled substance.  Evola Memorandum of Law, p.2.  Petitioner nonetheless disputes the BIA's finding that his conviction under 21 U.S.C. § 843(b) is an "aggravated felony" because such a finding precludes him from seeking a cancellation of removal pursuant to INA § 240(a), codified at 8 U.S.C. § 1229b.[3]  Evola asserts that he would otherwise be eligible to participate in that process.

The INA defines an "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B).  A drug trafficking crime, according to section 924(c) of Title 18, is defined to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.). . ."

Evola concedes that 21 U.S.C. § 843(b) is a felony punishable under the Controlled Substances Act, but argues that it is not an "aggravated felony" because it does not involve "illicit trafficking," a crucial and necessary piece of the "aggravated felony" puzzle.  Evola contends that "illicit trafficking" - dealing or trading in a commercial fashion - is the gravamen of an "aggravated felony," and the subsets of felonies identified in the statutory scheme should not include federal offenses that do not involve a trafficking element.  Evola next argues that the

---

[3]Section 1229b(b) grants the Attorney General the discretion to cancel the removal of a lawful permanent resident if certain equitable circumstances exist, including extremely unusual hardship to the alien's family.  Such relief is unavailable to those convicted of "aggravated felonics" under the INA.

Court is confined by the language of the statute when determining whether a conviction is an "aggravated felony," and 21 U.S.C. § 843(b) "does not necessarily have a trafficking element inherent to the statute." Evola Memorandum of Law, p.4.

Evola attempts to muddy what the Court perceives as clear waters. The Court is guided by the explicit statutory language. An "aggravated felony" is defined to include "illicit trafficking in a controlled substance . . ., including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c) defines a drug trafficking crime to include "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801, et. seq.)." Evola's violation of 21 U.S.C. § 843(b), for the use of a communication device to facilitate a conspiracy to distribute and to possess with intent to distribute a controlled substance, is a part of the Controlled Substances Act. Thus, the logic plays out as follows: an "aggravated felony" under the INA is defined as "including a drug trafficking crime," which is defined as "any felony punishable under the Controlled Substances Act." The Petitioner was convicted of a crime under the Controlled Substances Act and, therefore, committed an "aggravated felony" for purposes of the INA. In fact, such logic compelled the Sixth Circuit to make the same finding: "under the plain language of the relevant statutes, a violation of 21 U.S.C. §843(b) qualified as an aggravated felony under the INA." *Kayrouz v. Ashcroft*, No. 03-5372, 2004 U.S. App. LEXIS 25105, \*4-5 (6th Cir. Sept. 22, 2004) *aff'g Kayrouz v. Ashcroft*, 261 F. Supp. 2d 760 (E.D. Ky. 2003); *see also Calcano-Martinez v. INS*, 232 F.3d 328, 332 (2d Cir. 2000) (noting that a petitioner convicted under 21 U.S.C. §843(b) was ineligible to seek cancellation of removal because his conviction constituted an "aggravated felony"). *Kayrouz*, though not binding, is nonetheless on point, and petitioner conceded at oral argument that there is no case law to the

contrary.

In the alternative, Evola argues that 21 U.S.C. § 843(b), though a felony, is a "lesser

offense" because it carries a lighter maximum penalty than other statutes in the Controlled

Substances Act. Therefore, this lesser federal felony should not be considered an "aggravated

felony." Evola looks for support from *Steele v. Blackman*, 236 F.3d 130 (3d Cir. 2001), where

the Third Circuit reversed a finding that an alien's multiple state misdemeanors constituted an

"aggravated felony." The Court found that the BIA could not add up multiple state court

misdemeanors to equal an "aggravated felony." Like the multiple misdemeanors in *Steele*, Evola

argues that his conviction should be treated as a lesser offense. First, the *Steele* case is easily

distinguishable because the alien was never convicted of a federal felony, as Evola was here.

Second, that Evola appeals to the Court's sense of fairness, asking it to weigh the relative

severity of each felony under the Controlled Substances Act, simply has no place in this analysis

due to the clear statutory scheme set forth by Congress.[4] Accordingly, Evola's § 2241 petition is

denied.

### B.    Writ of Error Coram Nobis

A writ of error coram nobis is a rare and dated form of relief available to federal courts in

criminal matters under the All Writs Act, 28 U.S.C. § 1651(a). *United States v. Stoneman*, 870

F.2d 102, 105-06 (3d Cir. 1989). The writ "is used to attack allegedly invalid convictions which

have continuing consequences, when the petitioner has served his sentence and is no longer 'in

---

[4]Evola finally argues that at the very least, the INA's definition of "aggravated felony" in
8 U.S.C. § 101(a)(43)(B) is ambiguous, and should be construed in favor of the alien. That
statutory definition of "aggravated felony" is a broad one does not render it ambiguous. Thus,
this argument lacks merit.

custody' for purposes of 28 U.S.C. §2255." *Stoneman*, 870 F.2d at 105-06. Moreover, it is only appropriate to "correct errors for which there was no remedy available at the time of trial and where 'sound reasons' exist for failing to seek relief earlier." *Id.* at 106.

Due to the Court's significant interest in finality of judgments, and because the writ is so extraordinary, the standard for a successful collateral attack is more stringent than that of § 2255 petitions. *Stoneman*, 870 F.2d at 106. There must be errors of fact "of the most fundamental kind" that "must go to the jurisdiction of the trial court, thus rendering the trial itself invalid." *Id.*; *United States v. Morgan*, 346 U.S. 502 (1954). There must be a complete miscarriage of justice. *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996). The remedy is so extreme that the Supreme Court observed it "is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (alteration in original) (citation omitted).

### 1. A Threshold Showing for a Writ of Error Coram Nobis

The government argues that Evola's petition should be denied because it is in substance a matter governed by 28 U.S.C. § 2255. The government suggests that Evola has filed the writ to avoid having to clear the difficult statutory hurdle of receiving certification for a second or successive § 2255 petition. Without such certification, the Court would lack jurisdiction. *See Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004). The Court disagrees with this position. Evola cannot seek certification to file a successive §2255 petition because he is no longer "in custody" for purposes of the statute. *See Stoneman*, 870 F.2d at 105-06. A person is no longer "in custody" for purposes of § 2255 where the sentence imposed for the conviction has expired, and Evola's expired in 2003. *Custis v. United States*, 511 U.S. 485, 497 (1994).

-8-

However, an argument can be made that Evola remains "in custody" because he is being detained by BICE pending his deportation, and such detention flowed from his conviction. In *United States v. Romero-Vilca*, 850 F.2d 177 (3d Cir. 1988), the petitioner filed a § 2255 petition while in custody to collaterally attack his sentence once he discovered he could be deported. Upon the petitioner's release from his prison sentence, the government sought to dismiss his petition as moot. *Id.* at 178. The Third Circuit refused, finding that the petition could survive because the continuing collateral consequence of removal "flows from his conviction." *Id.* at 179. The distinguishing factor here, however, is that Evola filed the petition for the writ *after* his release, whereas the petitioner in *Romero-Vilca* filed while still incarcerated on his conviction. The Third Circuit has not decided a case such as Evola's, but the Court surmises that a § 2255 petition filed after the conclusion of a sentence would be dismissed as moot. *See Obado v. New Jersey*, 328 F.3d 716, 717-18 (3d Cir. 2003); *Neyor v. Immigration & Natur. Servs.*, 155 F. Supp. 2d 127, 134 (D.N.J. 2001) (holding that a petitioner is not "in custody" for purposes of § 2254 if he filed after his sentence expired, even though he was in INS custody pending removal proceedings). The Court concludes, therefore, that being in the custody of BICE does not render an individual "in custody" for purposes of § 2255.[5] Thus, Evola would be ineligible to seek relief pursuant to § 2255.

As another threshold matter, the petitioner must also show that the conviction carries

---

[5]The Court finds persuasive the reasoning of the Fifth Circuit in *United States v. Esogbue*, 357 F.3d 532 (5th Cir. 2004). In *Esogbue*, the district court dismissed a petition for a writ of error coram nobis for lack of jurisdiction based on the government's argument that the petitioner failed to file a successive § 2255 petition. The circuit court reversed, finding that the petitioner was not "in custody" because his sentence had expired and, therefore, the alternative to coram nobis - a successive § 2255 petition - was not available to him. *Esogbue*, 357 F.3d at 534.

"continuing consequences," there "was no remedy available at trial," and "sound reasons exist for failure to seek relief earlier." *Stoneman*, 870 F.2d at 106 (internal quotations omitted). Evola asserts that his guilty plea is invalid based on the ineffective assistance of counsel he received: incorrect advice as to the deportation consequences of his plea. He further alleges that he suffers continuing, extraordinary consequences, in that he faces deportation after twenty-five years in the United States, and he will be separated from his immediate family, including three children, and his ongoing business, which provides the financial support for his family. Finally, he did not delay in seeking relief because he was under the impression that he was not subject to removal until 2002, when the INS initiated removal proceedings. He filed a § 2255 petition soon after, which was denied as untimely. The petition was decided in September 2003, *after* the completion of his sentence, and he filed this writ in April 2005. Since his petition was not decided until after the expiration of his sentence, Evola had no reason to seek certification under § 2255 to file a successive petition. Although the Court is disturbed by his eighteen month delay in filing this petition, during which time he was well aware of the removal proceedings, the Court is satisfied that Evola has made a threshold showing that a writ of error coram nobis would be the appropriate form of relief.

### 2.   Ineffective Assistance of Counsel

The Third Circuit has recognized that persons not "in custody" wishing to challenge a conviction for fundamental defects such as ineffective assistance of counsel may obtain relief through this writ. *United States v. Rad-O-Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979); *see also United States v. Golden*, 854 F.2d 31, 32-33 (3d Cir. 1988). On an ineffective assistance of counsel claim, the Court is guided by *Hill v. Lockhart*, 474 U.S. 52 (1985). *Hill* adopted the

-10-

two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), but tailored the test for ineffective assistance of counsel claims arising out of a guilty plea. Evola must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 57; *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003) (the "prejudice prong"). Judicial scrutiny of counsel's conduct must be highly deferential. The Court is directed to "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The burden lies with the petitioner. *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

  To support his position, Evola submits his own affidavit, and those of his father-in-law William Joseph Becker, Sr., and friend Giovanni Sparacio (which were prepared in anticipation of his September 2002 § 2255 petition). *See* Evola Petition, Exhibit A. According to these affidavits, while the indictment was pending, Evola, Becker and Sparicio met with Santaguida at his office to discuss Evola's case. Becker recalled that the government had offered a plea agreement calling for a sixteen month prison sentence. Santaguida indicated that such a plea might carry deportation consequences, and he conferred with an attorney whom he knew to be involved in immigration matters to confirm that representation. Evola indicated he would not accept a plea that would result in deportation because his entire family was established in New Jersey, including his wife, children and parents. Evola Aff. at 9-11; Becker Aff. at 7-8; Sparicio Aff. at 8. Santaguida then called the United States Attorney's Office and discussed the possibility of pleading guilty to Count 20, 21 U.S.C. § 843(b). He advised Evola, based on his

-11-

conversation with his colleague, that he would not be deported if he pled guilty to Count 20.

Evola Aff. at 11. Santaguida also said there was a good chance Evola would avoid jail time. *Id.*

Santaguida advised Evola that he did not think the government had a strong case against him, but

the difference in sentences should he be convicted by a jury under Count 1 was enormous. *Id.*

Evola decided to take the plea, which he claims he would not have done without assurances

regarding the lack of deportation consequences. *Id.*

Santaguida's version of the events are contained in a letter to Immigration Services sent

on Evola's behalf. Santaguida wrote:

> Although I believed in my professional opinion that the evidence supporting the
> government's allegations against Mr. Evola were somewhat weak, I advised Mr.
> Evola to engage in a plea agreement with the government. My advise [sic] was
> based on the fact that the agreement involved Mr. Evola pleading guilty to a count
> in the indictment that charged him with using a telephone facility in exchange for
> a probationary sentence. At the time that this agreement took place, I did in fact
> discuss the situation with an attorney whom I had known to be involved in
> immigration matters. The attorney explained to me that, at that time, Mr. Evola
> should not suffer any consequences in terms of his immigration status. At that
> time, Mr. Evola agreed that this agreement seemed the best resolution for him,
> despite the fact that we had a chance of acquittal had Mr. Evola chosen to try his
> case.

*See* Evola Petition, Exhibit B. It appears from this letter that Santaguida never guaranteed Evola

would not face possible deportation. The attorney he consulted advised him that Evola "should

not" suffer deportation consequences. Santaguida also stressed the importance of the

probationary sentence, suggesting that deportation was not the only consideration in taking the

plea. Santaguida did not act unreasonably in advising Evola that the initial plea offer would

result in a period of incarceration and possible deportation, and then consulting a fellow attorney

with more experience on immigration matters regarding deportation consequences of the lesser

plea he negotiated on Evola's behalf. Evola does not indicate that he pressed Santaguida on immigration matters at any other time during his representation.

Accepting Evola's representations as true, it appears that Santaguida provided Evola with misadvice concerning the immigration consequences of accepting a particular guilty plea. *See Downs-Morgan v. United States*, 765 F.2d 1534, 1541 (11th Cir. 1985) (stating that some misinformation can be so important as to render a guilty plea invalid). However, Santaguida's letter is unconvincing to support Evola's position, for the reasons stated above. *See United States v. Day*, 969 F.2d 39, 45-46 (3d Cir. 1992). Yet, the Court is troubled by Santaguida's representations in light of the clear statutory scheme set forth by Congress dictating the triggers for removal. Despite reaching out to another attorney with experience in immigration matters, Santaguida could have availed himself of the INA statutes and properly advised Evola on his own. Section 237 of the INA, codified at 8 U.S.C. § 1227, is titled "General classes of deportable aliens." And 8 U.S.C. § 1227(a)(2)(B)(i) states that an alien shall be removed if he is convicted "of a violation (or a conspiracy or attempt to violate) of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))...." In addition, as the Court addresses in section A of this discussion, Evola is subject to mandatory removal by virtue of his conviction falling within the definition of an "aggravated felony." At the very least, however, Evola was clearly removable under the circumstances of his case because his conviction related to a controlled substance.

Evola concedes that this circuit has yet to address whether the misadvice of counsel concerning the collateral consequences of a guilty plea, namely, the possibility of deportation,

-13-

constitutes ineffective assistance of counsel. *See United States v. Nino*, 878 F.2d 101, 105 (3d

Cir. 1989) (finding that petitioner failed to meet prejudice requirement under *Strickland* where

attorney failed to advise of immigration consequences).[6]  Evola cites to scattered case law

suggesting that such misadvice is ineffective assistance, *see United States v. Couto*, 311 F.3d

179, 188 (2d Cir. 2002) (affirmative misrepresentation of deportation consequences is "today

objectively unreasonable"), but the Court declines to make such a *per se* ruling. *See also Downs-*

*Morgan*, 765 F.2d at 1541 (suggesting that an affirmative misstatement of deportation

consequences may lead to an ineffective assistance of counsel claim); *United States v. Nagaro-*

*Garbin*, 653 F. Supp. 586, 590 (E.D.Mich. 1987).  Under the *Strickland-Hill* analysis, the Court

must look to the circumstances of each case, and thus an evidentiary hearing could be held in

order to determine if Santaguida's misrepresentation regarding the removal consequences of

Evola's guilty plea fell below prevailing professional norms. *See Day*, 969 F.2d at 44.

     The Court, however, does not find such a hearing necessary in this case.  Under the

prejudice prong, "the defendant must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill*, 474 U.S. at 57.  The only evidence in the record to support that Evola would have insisted

on going to trial had he known the true immigration consequences of pleading guilty comes from

the self-serving affidavits submitted by present counsel.  Yet, nowhere in the record does Evola

claim his innocence. *See United States v. Gonzalez*, 202 F.3d 20, 24 (1st Cir. 2000) (stating that

the "consistent failure to assert . . . innocence weighs against" the withdrawal of a plea).  Evola

---

[6]The court refused to reach the issue of whether counsel's failure to advise of immigration
consequences in a guilty plea constituted deficient performance.

faced a 23-count indictment with eleven co-defendants as part of a conspiracy to distribute narcotics. Santaguida made it clear to Evola that there was great risk in appearing before a jury - a conviction and a far greater sentence (including, presumably, certain removal). Evola Aff. at 11. Thus, immigration consequences may have been a factor in his decision to plead, but it appears that Evola pled guilty both because he committed the crime and because of the daunting alternative of facing a jury. In fact, the government dismissed Count I which carried a significantly greater sentence than the five years probation that Evola received. *Nino*, 878 F.2d at 105; *LaPorta v. United States*, 651 F. Supp. 884, 893 (E.D. Pa. 1986).

The record also contains statements made by Evola and Santaguida that mitigate against a finding that Evola suffered prejudice. When asked at his plea hearing, "Why did you decide to enter this plea of guilty, because in fact you are guilty or for some other reason?," Evola responded, "No, because I am guilty." Plea Transcript, Aug. 13, 1997, 33:12-15. Also, at the sentencing, the government set forth Evola's involvement in the conspiracy, arguing that he was an important component in co-defendant Giacomo Gallina's efforts to expand his drug distribution ring into Camden, New Jersey. He arranged a meeting at his pizza shop between his employee, co-defendant Charles Baskerville, and a known Camden-area drug dealer, so Bakserville could give the drug dealer a sample of Gallina's heroin. The government also alleged that Evola maintained a "supervisory role" over Baskerville. Sentencing Transcript, Feb. 19, 1998, 6:12-14. While advocating in favor of a light sentence, Santaguida disagreed with the government's portrayal of Evola's role, stating:

> The only reason why [Evola] is guilty is because he did know why they were trying to get together and it would be like two people who are going to commit a bank robbery and the third person said, look, I don't want any participation in this,

-15-

but here's a mask you can use in case you want to do it. It would put him in the conspiracy, but not in the effect that he was going to share in any proceeds or participate in any type of activity in the robbery. Here, the only thing he does know what Mr. Gallina's about, and he does know what they want Mr. Baskerville to do.

Sentencing Transcript, Feb. 19, 1998, 7:22-25 - 8:1-9. Even according Evola the benefit of Santaguida's representations, his guilt was never in doubt. Plus, the Court cannot ignore the considerations Evola received through his plea agreement, regardless of the potential collateral removal consequences. Therefore, Evola has not satisfied the Court that there is a reasonable probability he would have insisted on going to trial had he known of the immigration consequences of his guilty plea. *See Nino*, 878 F.2d at 105. Accordingly, the Court finds that this case is not appropriate for the "extraordinary remedy" of a writ of error coram nobis. *Stoneman*, 870 F.2d at 106.

## III.    CONCLUSION

Evola's § 2241 petition is denied because the Court finds that a violation of 21 U.S.C. § 843(b) is an "aggravated felony" for purposes of removability under the INA. Similarly, Evola's petition for a writ of error coram nobis is denied because Evola failed to carry his burden of showing ineffective assistance of counsel. An appropriate order follows.

Dated: April 19, 2005

s/ Joel A. Pisano, U.S.D.J.
HON. JOEL A. PISANO